# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | |
|---|---|
| DISABILITY RIGHTS MARYLAND, INC., ) <br> 1500 Union Ave., Ste. 2000 ) <br> Baltimore, MD 21211 ) <br> (County of residence: Baltimore City) ) <br> ) <br> *Plaintiff,* ) <br> v. ) <br> ) <br> PRINCE GEORGE'S COUNTY PUBLIC ) <br> SCHOOLS, Sasscer Administration Building ) <br> 14201 School Lane ) <br> Upper Marlboro, MD 20772, ) <br> (County of residence: Prince George's) ) <br> ) <br> and ) <br> ) <br> DR. MONICA GOLDSON ) <br> Chief Executive Officer ) <br> PRINCE GEORGE'S COUNTY PUBLIC ) <br> SCHOOLS, ) <br> Sasscer Administration Building ) <br> 14201 School Lane ) <br> Upper Marlboro, MD 20772, ) <br> (County of residence: Prince George's) ) <br> ) <br> and ) <br> ) <br> Dr. Juanita Miller, Sonya Williams, ) <br> David Murray, Joshua Thomas, Pamela ) <br> Boozer-Strother, Shayla Adams-Stafford, ) <br> Raaheela Ahmed, Belinda Queen, ) <br> Kenneth Harris II, Edward Burroughs III, ) <br> Judy Mickens-Murray, D. Paul Montiero, ) <br> Curtis Valentine and Alvero Ceron-Ruiz, ) <br> PRINCE GEORGE'S COUNTY BOARD OF ) <br> EDUCATION, ) <br> Sasscer Administration Building ) <br> 14201 School Lane ) <br> Upper Marlboro, MD 20772, ) <br> (County of residence: Prince George's) ) <br> ) <br> *Defendants.* ) | Case No. 11:21-cv-\_\_\_\_\_ \_\_\_\_/\_\_\_\_\_ <br> Judge _____ \_\_._____ |

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Disability Rights Maryland, Inc., by its undersigned attorneys, for its original Complaint for Declaratory and Injunctive Relief against Defendants Prince George's County Public Schools ("PGCPS" or "the School District"), its Chief Executive Officer, Dr. Monica Goldson, and Dr. Juanita Miller, Sonya Williams, David Murray, Joshua Thomas, Pamela Boozer-Strother, Shayla Adams-Stafford, Raaheela Ahmed, Belinda Queen, Kenneth Harris II, Edward Burroughs III, Judy Mickens-Murray, D. Paul Montiero, Curtis Valentine and Alvero Ceron-Ruiz, Members of the Prince George's County Board of Education, alleges upon personal knowledge, information and belief as follows:

## NATURE OF THE ACTION

1. Disability Rights Maryland, Inc. ("DRM") brings this action pursuant to 42 U.S.C. § 1983 and relevant provisions of the Developmental Disabilities Assistance and Bill of Rights ("DD") Act of 2000, 42 U.S.C. § 15001 *et seq.*; the Protection and Advocacy for Individuals with Mental Illness ("PAIMI") Act, 42 U.S.C. § 10801 *et seq.*; and the Protection and Advocacy for Individual Rights ("PAIR") Program of the Rehabilitation Act of 1973, 29 U.S.C. § 794e *et seq.* (collectively, the "P&A Acts").

2. Pursuant to its authority under the P&A Acts, DRM is empowered to investigate whether PGCPS is failing to provide students with disabilities with equal access to education and needed services and subjecting them to illegal or discriminatory suspension and expulsion practices. DRM received over 85 complaints in a roughly three-year period either directly from or on behalf of PGCPS students related to exclusionary discipline and accompanying educational neglect. The 85-plus identified PGCPS students attended 46 different schools across the district (10 high schools, 10 middle schools, and 26 elementary schools).

3. DRM determined, consistent with its statutory authority, to investigate the alleged exclusionary discipline practices of PGCPS related to students with disabilities. DRM requested from PGCPS names and contact information for the parents/legal guardians of students eligible for special education who are subject to a PGCPS suspension or expulsion of more than three days in order to pursue its investigation. However, PGCPS has improperly refused to provide this information to DRM.

4. This Complaint is brought to address PGCPS' illegal withholding of information critical to DRM's mission of protecting and advocating for children and youth with disabilities and fulfilling its legally mandated role as the designated Protection and Advocacy ("P&A") system for the State of Maryland.

## PARTIES

5. Plaintiff DRM, formerly known as Maryland Disability Law Center, is a non-profit 501(c)(3) organization that serves as the State of Maryland's designated P&A agency. *Developmentally Disabled Persons*, Md. Code Regs. 01.01.1986.12 (2021). In this role, DRM "is federally mandated to advance the civil rights of people with disabilities" and "provide[s] free legal services to Marylanders of any age with all types of disabilities (developmental, intellectual, psychiatric, physical, sensory, learning, traumatic brain injury), who live in facilities, in the community or who are homeless." *About*, DISABILITY RIGHTS MARYLAND, https://disabilityrightsmd.org/about/ (last visited Sept. 20, 2021). DRM's office is located at 1500 Union Ave., Ste. 2000, Baltimore, MD 21211.

6. Defendant PGCPS is a public-school system operating pursuant to Sections 101-126 of Title 4 of the Maryland Education Code. PGCPS is responsible for providing public school services in Prince George's County, Maryland. PGCPS is headquartered at Sasscer

Administration Building, 14201 School Lane, Upper Marlboro, Maryland 20772. PGCPS' acts and/or omissions complained of herein were undertaken under color of state law.

7. Defendant Dr. Monica Goldson is the Chief Executive Officer of Prince George's County Public Schools and has executive authority over the school system and responsibility for carrying out the laws relating to schools and carrying out the policies, rules and regulations of the State and the Prince George's County Board of Education. Dr. Goldson's responsibilities include assuring compliance with federal laws. Dr. Goldson is sued in her official capacity. Dr. Goldson maintains offices at Sasscer Administration Building, 14201 School Lane, Upper Marlboro, Maryland 20772. Dr. Goldson's acts and/or omissions complained of herein were undertaken under color of state law.

8. Defendants Dr. Juanita Miller, Sonya Williams, David Murray, Joshua Thomas, Pamela Boozer-Strother, Shayla Adams-Stafford, Raaheela Ahmed, Belinda Queen, Kenneth Harris II, Edward Burroughs III, Judy Mickens-Murray, D. Paul Montiero, Curtis Valentine and Alvero Ceron-Ruiz are the Members of the Prince George's County Board of Education ("PGCBOE"). They are sued in their official capacities. PGCBOE maintains offices at Sasscer Administration Building, 14201 School Lane, Upper Marlboro, MD 20772. The PGCBOE Members' acts and/or omissions complained of herein were undertaken under color of state law.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because all or a substantial part of Defendants' acts and omissions giving rise to Plaintiff's claims asserted in this action occurred within this judicial district.

## LEGAL FRAMEWORK

11. Through the P&A Acts, Congress established a nationwide P&A program providing financial support to state government and non-profit entities that advance the legal rights of individuals with disabilities. As a first step, the DD Act, passed in 1975, called for each state to "have in effect a system to protect and advocate the rights of individuals with developmental disabilities." 42 U.S.C. § 15043(a)(1); *see also* 42 U.S.C. § 15002(8) (defining "developmental disability"). In 1986, the PAIMI Act expanded state P&A systems' focus to include "ensur[ing] that the rights of individuals with mental illness are protected." 42 U.S.C. § 10801; *see also* 42 U.S.C. § 10802(4) (defining "individual with mental illness"). And, in 1992, Congress created the PAIR Program "to protect the legal and human rights of individuals with disabilities who" are ineligible for P&A services under the DD Act or the PAIMI Act. 29 U.S.C. § 794e(a)(1).

12. Under the framework established by the P&A Acts, state P&A systems are authorized to, *inter alia*, "investigate suspected incidents of abuse or neglect if complaints are reported to the system or if there is probable cause to investigate suspected abuse and/or neglect." 42 U.S.C. § 15043(a)(1) (DD Act); 42 U.S.C. § 10805(a)(1)(A) (PAIMI Act); 29 U.S.C. § 794e(f)(2) (noting that P&A systems acting pursuant to the PAIR Program "have the same general authorities, including the authority to access records . . ., as are set forth in" the DD Act). The P&A Acts further grant P&A systems the power to "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of" individuals with disabilities. 42 U.S.C. § 15043(a)(1) (DD Act); 42 U.S.C. § 10805(a)(1)(B) (PAIMI Act).

13. The PAIMI Act defines "neglect" as "a negligent act or omission by an individual responsible for providing services in a facility rendering care or treatment which caused or may

have caused injury or death to an individual with mental illness or which placed an individual with mental illness at risk of injury or death, and includes, but is not limited to, acts or omissions such as failure to: establish or carry out an appropriate individual program or treatment plan (including a discharge plan); provide adequate nutrition, clothing, or health care; and the failure to provide a safe environment which also includes failure to maintain adequate numbers of appropriately trained staff."  42 U.S.C. § 10802(5).

14. Similarly, the DD Act's implementing regulations define "neglect" as "a negligent act or omission by an individual responsible for providing services, supports or other assistance which caused or may have caused injury or death to an individual with a developmental disability(ies) or which placed an individual with developmental disability(ies) at risk of injury or death, and includes acts or omissions such as failure to: establish or carry out an appropriate individual program plan or treatment plan (including a discharge plan); provide adequate nutrition, clothing, or health care to an individual with developmental disabilities; or provide a safe environment which also includes failure to maintain adequate numbers of trained staff or failure to take appropriate steps to prevent self-abuse, harassment, or assault by a peer." 45 C.F.R. § 1326.19.

15. The general power of P&A systems to investigate abuse and neglect of individuals with disabilities includes the authority to scrutinize schools and other facilities providing special education services to disabled students.  For example, the definitions of neglect for the PAIMI Act and the DD Act include the failure to "establish or carry out an appropriate individual program plan or treatment plan" in connection with an individual with disabilities. *E.g.*, 42 U.S.C. § 10802(5).  Further, implementing regulations for the PAIMI Act define "care or treatment," a phrase embedded within the statutory definition of neglect, to mean "services

provided to prevent, identify, reduce or stabilize mental illness or emotional impairment such as . . . *special education and rehabilitation*, even if only 'as needed' or under a contractual arrangement." 42 C.F.R. § 51.2 (emphasis added). And courts across the country have recognized the P&A Acts' applicability to schools providing special education services, including in situations where, as here, the neglect[1] alleged by the plaintiff P&A system is the school's discriminatory conduct towards students with disabilities and failure to provide disabled students with the "free appropriate public education" ("FAPE") guaranteed to them under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq. See Disability Law Ctr. of Alaska, Inc. v. Anchorage Sch. Dist.*, 581 F.3d 936, 939-40 (9th Cir. 2009) (allowing P&A access to intensive special needs education class at school under PAIMI Act and DD Act)*; Disability Rights Wis., Inc. v. Wis. Dep't of Pub. Instruction*, 463 F.3d 719, 726 (7th Cir. 2006) (holding that school providing special education program "easily meets the definition of a facility" that a P&A system may investigate under the DD Act); *Disability Rights Pennsylvania v. School Dist. of Philadelphia*, 377 F. Supp. 3d 482, 483-84 (E.D. Pa. 2019) (rejecting defendant school district's argument that P&A system's authority "does not extend to investigating suspected denials of FAPE under the IDEA").

16.   To facilitate their investigatory function, state P&A systems are entitled to "all records of" individuals with disabilities when (1) access to those records is granted by the individual with disabilities or their legal guardian; (2) the individual with disabilities is unable to authorize access to those records, does not have a legal guardian, and "a complaint has been received by the system about the individual with regard to the status or treatment of the

---

[1] DRM determined to investigate educational neglect and whether PGCPS' practices violate Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131-12134), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), the Individuals with Disabilities Education Act, and students' state constitutional rights to education.

individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect;" and/or (3) the P&A system has tried to contact the disabled individual's legal guardian, "such representative has failed or refused to act on behalf of the individual," and "a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect."  42 U.S.C. § 15043(a)(2)(I) (DD Act); *see also* 42 U.S.C. § 10805(a)(4) (parallel provision from the PAIMI Act).

17.     Finally, and importantly for the purposes of this Complaint, if a P&A system's request for records is denied "for alleged lack of authorization, the name, address and telephone number of individuals with [] disabilities and legal guardians, conservators, or other legal representative will be included in the aforementioned response.  *All of the above information shall be provided whether or not the P&A has probable cause to suspect abuse or neglect, or has received a complaint.*"  45 C.F.R. § 1326.26 (emphasis added); *see also* 42 C.F.R. § 51.43 ("If a P&A system's access to facilities, programs, residents or records covered by the Act or this part is delayed or denied, the P&A system shall be provided promptly with a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name, address and telephone number of the legal guardian, conservator, or other legal representative of an individual with mental illness.").  In other words, while P&A systems are entitled to "all records of" individuals with disabilities if said individuals (or their guardians) authorize access, the P&A authority has received a complaint in connection with a disabled individual's status or treatment, and/or the P&A authority has probable cause to believe a disabled individual has been subject to abuse or neglect, *e.g.*, 42 U.S.C. § 15043(a)(2)(I) (DD Act), the P&A system *is not* required to

make any showing to receive the basic contact information of individuals with disabilities in connection with whom it makes a document request and their legal guardians.

## RELEVANT FACTS

18. Beginning in 2017, DRM joined with the Maryland Public Justice Center and the State Office of the Public Defender to establish the Maryland Suspension Representation Project ("MSRP"). Among other functions, the MSRP operates an intake hotline for families whose children are subject to discipline in Maryland's public schools and provides free representation to students in discipline proceedings across the state. DRM also operates its own intake line for families whose children have had their special education and school discipline rights violated.

19. Since January 2018, DRM, through both the MSRP and its intake hotline, has received and investigated numerous complaints from parents of students with disabilities enrolled in PGCPS schools who are concerned about the School District's use of exclusionary discipline aimed at those students and its general neglect of disabled students. For example, many of the complaints DRM has received focus on PGCPS' failure to provide disabled students with equal access to education by properly implementing their Individualized Education Programs ("IEPs") or Behavioral Intervention Plans ("BIPs"). The complaints also describe how, rather than trying to accommodate these students' disabilities as required by law, PGCPS responds by punitively suspending or expelling students for disability-related behavior and then fails to provide those students with adequate education services after they have been suspended or expelled.

20. In an effort to investigate these complaints further, DRM wrote to PGCPS on August 12, 2020. In the letter, DRM identified itself as "the designated protection and advocacy system (P&A) for Maryland" and noted that it "ha[d] determined there exists probable cause to investigate whether PGCPS failed to implement the [IEPs] and [BIPs] of students with

disabilities in the district and subjected these students to punitive exclusionary discipline resulting in a denial of a [FAPE]."

21.     DRM's letter to PGCPS requested identifying information (such as name, last school of attendance, and primary class) and parent/legal representative contact information for special education students who, from January 1, 2019 to the date of the letter, received a short-term suspension, long-term suspension, extended suspension, or an expulsion.  Further, DRM explicitly stated that it was requesting the information pursuant to DRM's authority under all three P&A Acts and cited 42 U.S.C. § 15043 (DD), 42 U.S.C. § 10801 *et seq.* (PAIMI), and 29 U.S.C. § 794e(f) as providing the legal basis for its request.

22.     PGCPS replied to DRM's letter on September 2, 2020.  In its response, PGCPS provided the total number of students eligible for special education who, between January 1, 2019 and August 12, 2020, also received a short-term suspension, a long-term suspension, an extended suspension, and/or an expulsion.  However, PGCPS refused to provide DRM with the student identifying information or parent/legal guardian contact information that DRM had requested.  PGCPS claimed that DRM's request for this information was improper because, it said, the alleged harm detailed in DRM's letter "[did] not meet the statutory definition of abuse and neglect."

23.     Over the next several months, DRM and PGCPS (through its outside legal counsel) exchanged additional correspondence related to DRM's initial request for information.  For its part, DRM narrowed the scope of its request to include only the names and parent/legal guardian contact information of students eligible for special education who received suspensions or expulsions of more than three days during the period of interest, and also provided PGCPS with additional information about DRM's authority to investigate abuse and neglect and to

access records under the P&A Acts.  However, PGCPS continued to deny DRM's request for this basic data, claiming, for example, that DRM was not entitled to the information it requested because it had failed to provide written authorization from the students' parents/legal representatives to access the requested information and that it lacked probable cause to investigate the treatment of disabled students by PGCPS.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**(The Developmental Disabilities Assistance and Bill of Rights (DD) Act of 2000 and 42 U.S.C. § 1983)**

24.     Plaintiff incorporates and re-alleges paragraphs 1-23, as if fully set forth herein.

25.     DRM, as Maryland's designated P&A system, has the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities, 42 U.S.C. § 15043(a)(1)(A), and access "all records of" individuals with developmental disabilities under certain circumstances.  *Id.* at § 15043(a)(1)(I).  When an entity serving individuals with developmental disabilities denies a P&A system's request for records "for alleged lack of authorization, the name, address and telephone number of individuals with developmental disabilities and legal guardians, conservators, or other legal representative will be included in the aforementioned response.  All of the above information shall be provided whether or not the P&A has probable cause to suspect abuse or neglect, or has received a complaint."  45 C.F.R. § 1326.26.

26.     In response to complaints DRM received from parents/legal representatives of students with disabilities, DRM began to investigate whether PGCPS subjected those students to educational neglect.  To this end, and in its capacity as Maryland's P&A authority, DRM requested that PGCPS provide it with, among other types of information, the names and contact

-11-

information for the parents/legal guardians of students eligible for special education in the School District who had also received suspensions or expulsions.

27.     Defendants denied DRM access to this information despite DRM's clear legal entitlement to it regardless of whether DRM possessed probable cause to believe that PGCPS subjected students with developmental disabilities to neglect or abuse.  *See* 45 C.F.R. § 1326.26. In any event, DRM *does* possess probable cause to believe that such abuse and neglect has occurred (and continues) within the School District.

28.     By refusing DRM's reasonable requests, Defendants, acting under color of state law, 42 U.S.C. § 1983, violated the "access to records" provision of the DD Act, 42 U.S.C. § 15043(a)(1)(I), and 45 C.F.R. § 1326.26.

## SECOND CAUSE OF ACTION
### (The Protection and Advocacy for Individuals with Mental Illness (PAIMI) Act and 42 U.S.C. § 1983)

29.     Plaintiff incorporates and re-alleges paragraphs 1-23, as if fully set forth herein.

30.     DRM, as Maryland's designated P&A system, has the authority to investigate incidents of abuse and neglect of individuals with mental illnesses, 42 U.S.C. § 10805(a)(1)(A), and access "all records of" individuals with mental illnesses under certain circumstances.  *Id.* at § 10805(a)(4).  When an entity serving individuals with mental illnesses denies a P&A system's request for records covered by the PAIMI Act "for alleged lack of authorization," "the P&A system shall be provided promptly with . . . the name, address and telephone number of the legal guardian, conservator, or other legal representative of an individual with mental illness." 42 C.F.R. § 51.43.

31.     In response to complaints it received from parents/legal guardians of students with mental illnesses, DRM began to investigate whether PGCPS subjected those students to

educational neglect. To this end, and in its capacity as Maryland's P&A authority, DRM requested that PGCPS provide it with, among other types of information, the names and contact information for the parents/legal guardians of students eligible for special education in the School District who had also received suspensions or expulsions.

32. Defendants denied DRM access to this information despite DRM's clear legal entitlement to it regardless of whether DRM possessed probable cause to believe that PGCPS subjected students with mental illnesses to neglect or abuse. *See* 42 C.F.R. § 51.43. In any event, DRM *does* possess probable cause to believe that such abuse and neglect has occurred (and continues) within the School District.

33. By refusing DRM's reasonable requests, Defendants, acting under color of state law, 42 U.S.C. § 1983, violated the "access to records" provision of the PAIMI Act, 42 U.S.C. § 10805(a)(4), and 42 C.F.R. § 51.43.

### THIRD CAUSE OF ACTION
**(Protection and Advocacy for Individual Rights (PAIR) Program of the Rehabilitation Act of 1973 and 42 U.S.C. § 1983)**

34. Plaintiff incorporates and re-alleges paragraphs 1-23, as if fully set forth herein.

35. DRM, as Maryland's designated P&A authority, is charged with protecting "the legal and human rights of individuals with disabilities who" are ineligible for P&A services under the DD Act or the PAIMI Act. 29 U.S.C. § 794e(a)(1). Under the PAIR Program, DRM has "the same general authorities, including the authority to access records . . ., as are set forth in" the DD Act. *Id.* at § 794e(f)(2).

36. The PAIR Program, through the provisions of the DD Act, grants DRM the authority to investigate incidents of abuse and neglect of individuals with disabilities, 29 U.S.C. § 794e(f)(2); 42 U.S.C. § 15043(a)(1)(A), and access "all records of" individuals with disabilities

under certain circumstances.  29 U.S.C. § 794e(f)(2); 42 U.S.C. § 15043(a)(1)(I).  When an entity serving individuals with disabilities denies a P&A system's request for records "for alleged lack of authorization, the name, address and telephone number of individuals with [] disabilities and legal guardians, conservators, or other legal representative will be included in the aforementioned response.  All of the above information shall be provided whether or not the P&A has probable cause to suspect abuse or neglect, or has received a complaint."  45 C.F.R. § 1326.26

37. In response to complaints it received from parents/legal guardians of students with disabilities, DRM began to investigate whether PGCPS subjected those students to educational neglect.  To this end,  and in its capacity as Maryland's P&A authority, DRM requested that PGCPS provide it with, among other types of information, the names and contact information for the parents/legal guardians of students eligible for special education in the School District who had also received suspensions or expulsions.

38. Defendants denied DRM access to this information despite DRM's clear legal entitlement to it regardless of whether DRM possessed probable cause to believe that PGCPS subjected students with disabilities to neglect or abuse.  *See* 45 C.F.R. § 1326.26.  In any event, DRM *does* possess probable cause to believe that such abuse and neglect has occurred (and continues) within the School District.

39. By refusing DRM's reasonable requests, Defendants, acting under color of state law, 42 U.S.C. § 1983, violated the "access to records" provision of the DD Act, 42 U.S.C. § 15043(a)(1)(I), and 45 C.F.R. § 1326.26.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(a) Declare, in accordance with 28 U.S.C. § 2201, that Defendants violated the DD Act, PAIMI Act, and PAIR Program by refusing to provide DRM with the names and contact information of the parents/legal guardians of students eligible for special education in the School District who have also received a suspension or expulsion of more than three days since January 1, 2019;

(b) Enter preliminary and thereafter permanent injunctive relief, pursuant to 28 U.S.C. § 2202, requiring Defendants to provide DRM with the names and contact information of the parents/legal guardians of students eligible for special education in the School District who have also received a suspension or expulsion of more than three days since January 1, 2019;

(c) Retain jurisdiction over this action to ensure Defendants' compliance with the mandates of the DD Act, PAIMI Act, and PAIR Program;

(d) Award Plaintiff its reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(e) Order all such other, further, or different relief as the Court deems equitable and just.


DATED: November 19, 2021

                                                    Respectfully submitted,

                                                    _____/s/_____
                                                    Luciene M. Parsley, Fed. Bar No. 27089
                                                    DISABILITY RIGHTS MARYLAND
                                                    1500 Union Ave.
                                                    Suite 2000
                                                    Baltimore, MD  21211
                                                    Email:  LucieneP@DisabilityRightsMD.org
                                                    Telephone:  (410) 727-6352 x2494
                                                    Facsimile:  (410) 727-6389

-16-

      /s/
Megan Berger, Fed. Bar No. 21705
(signed by Luciene M. Parsley with permission of Megan Berger)
DISABILITY RIGHTS MARYLAND
1500 Union Ave.
Suite 2000
Baltimore, MD  21211
Email: Megan.Berger@DisabilityRightsMD.org
Telephone:  (410) 727-6352 x2504
Facsimile:  (410) 727-6389

      /s/
Theodore A. Howard (application for *pro hac vice* pending)
(signed by Luciene M. Parsley with permission of Theodore A. Howard)
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
Email:  thoward@wiley.law
Telephone:  (202) 719-7000

      /s/
Nazak Nikakhtar (application for *pro hac vice* pending)
(signed by Luciene M. Parsley with permission of Nazak Nikakhtar)
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
Email:  nnikakhtar@wiley.law
Telephone:  (202) 719-7000

*Attorneys for Plaintiff Disability Rights Maryland*