IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DISABILITY RIGHTS MARYLAND,** | * | |
| Plaintiff, | * | |
| v. | * | Case No. 8:21-cv-03001-JRR |
| **PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS,** *et al.,* | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This matter comes before the court on Plaintiff Disability Rights Maryland's ("DRM") Motion for Summary Judgment (ECF No. 33) and Defendants Prince George's County Board of Education, Dr. Monica Goldson, and Dr. Juanita Miller's Cross Motion for Summary Judgment (ECF Nos. 56 and 57). The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2021). For the reasons set forth herein, Plaintiff's Motion will be granted and Defendants' Motion will be denied.

### I.  BACKGROUND

#### A.  Statutory Framework

##### 1.  Developmental Disabilities and Bill of Rights Act

In 1975, Congress enacted the Developmental Disabilities and Bill of Rights ("DD") Act pursuant to which each state designates a State Protection and Advocacy System ("P&A System") "to protect the legal and human rights of individuals with developmental disabilities." 42 U.S.C. § 15041. Under the DD Act, each P&A System "shall have the authority to pursue administrative, legal, and other appropriate remedies to ensure the protection of, and advocacy for, the rights of

such individuals with" developmental disabilities. 42 U.S.C. § 15043(a)(2)(A)(i). Further, such system "shall have the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." *Id.* § 15043(a)(2)(B). P&A Systems shall "have access to all records" of an individual with a developmental disability under certain circumstances. *Id.* § 15043(a)(2)(I).

### 2. Protection and Advocacy for Individuals with Mental Illness Act

In 1986, Congress enacted the Protection and Advocacy for Individuals with Mental Illness ("PAIMI") Act to "ensure that the rights of individuals with mental illness are protected." 42 U.S.C. § 10801. Similar to the DD Act, PAIMI provides that each P&A System "shall have the authority to investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." *Id.* § 10805(a)(1)(A). Such P&A Systems shall also "have access to all records" of an individual with a mental illness under certain circumstances. *Id.* § 10805(a)(4).

### 3. Protection and Advocacy of Individual Rights Program

In 1994, Congress enacted a third statute, the Protection and Advocacy for Individual Rights ("PAIR") Program, to provide the same protections to individuals with disabilities who are not covered under the DD Act or PAIMI. 29 U.S.C. § 794e(a)(1). In order to receive federal funds under the PAIR Program, a state must "have in effect a system to protect and advocate the rights of individuals with disabilities." *Id.* § 794e(f)(1). Each eligible system shall "have the same general authorities, including the authority to access records and program income" as set forth in the DD Act. *Id.* § 794e(f)(2). Similar to the DD Act and PAIMI, each eligible system also has "the authority to pursue legal, administrative, and other appropriate remedies or approaches to

ensure the protection of, and advocacy for, the rights of such individuals within the State . . . ." *Id.* § 794e(f)(3).

"The core requirement of the federal P&A statutes is that, in order to receive federal funding, each state must establish an effective protection and advocacy system to respond to allegations of abuse and neglect and generally to protect the rights of individuals with disabilities." *Disability Rights Wis., Inc. v. State Dep't of Pub. Instruction*, 463 F.3d 719, 724 (7th Cir. 2006). "The DD Act, the PAIMI Act and the PAIR Act establish separate but largely parallel regimes to serve particular populations of people with disabilities." *Id.* Together the DD Act, the PAIMI Act and the PAIR Program are referred to herein as the "P&A Acts."

## II.     STIPULATED AND/OR UNDISPUTED FACTS[1]

The following are undisputed or stipulated facts:

DRM is the state's federally mandated P&A System. (Megan Berger Affidavit; ECF No. 33-3 ¶ 2.) Since 2017, DRM, the Maryland Public Justice Center, and the State Office of the Public Defender have formally partnered to establish the Maryland Suspension Representation Project ("MSRP"), launching a statewide intake line for families navigating the school disciplinary process. Additionally, DRM separately maintains an intake line for families who believe their children's special education and school discipline rights have been violated. *Id.* ¶¶ 3-4; *see also* ECF No. 26-5.

---

[1] Defendant's Motion at page 8, footnote 7 provides as follows: "On January 18, 2022, DRM agreed to stipulate as follows with regard to the communications between the parties: 1. The documents attached hereto . . . and identified in the attached exhibit list are true and correct images of the genuine originals of each· 2. The documents attached hereto constitute the sum total of all substantive written communications between the plaintiff and the defendants, or their attorneys, with regard to the subject matter of the captioned case prior to November 23, 2021, and 3. There were no substantive oral communications between the plaintiffs and the defendants, or their attorneys, with regard to the subject matter of the captioned case prior to November 23, 2021." (ECF No. 56 at 8 n.7.) The court incorporates these stipulations herein as undisputed facts.

From January 2018 to April 2021, DRM received over 85 complaints transmitted through its intake call line, referrals from the MSRP, and attorneys and advocates who worked with Prince George's County Public Schools ("PGCPS" or "School District") parents and families. *Id.* ¶ 5. The students identified in the complaints attended 46 different schools across PGCPS (10 high schools, 10 middle schools, and 26 elementary schools). *Id.* ¶ 8. The complaints relate to exclusionary discipline and interrelated forms of educational neglect of students with disabilities, and allege that, instead of handling challenging, disability-related behaviors with appropriate supports, PGCPS responds with punitive, exclusionary discipline. *Id.* ¶¶ 5, 8. Some of the complaints allege that PGCPS fails to provide disabled students with legally required education services while these students are removed from school for disciplinary reasons. *Id.* ¶ 9.

DRM investigated many of the complaints received and determined that "PGCPS frequently violated the educational rights of students with disabilities." Further, DRM learned from PGCPS's enrollment and discipline data that during the 2018-19 school year, students with Individualized Education Plans in PGCPS accounted for 11% of enrollment and 23% of students disciplinarily removed. (ECF No. 33-3 ¶¶ 10-11.)[2]

On August 12, 2020, DRM sent a letter to PGCPS requesting the following:

> From the period of January 1, 2019 to the date of this letter, the names of District students in the following categories who have experienced exclusionary discipline, and for each student:
>
> (a) name, last school of attendance, and the primary class to which the student was assigned; and
>
> (b) name, telephone number and address for the student's parents/guardians:

---

[2] Citing "Suspensions, Expulsions, and Health Related Exclusions 2018-2019," http://www.marylandpublicschools.org/about/Documents/DCAA/SSP/20182019Student/2019SuspensionsExpulsionsHRExc.pdf.

4

    a. Any and all students who are eligible for special needs education and who have received a short-term suspension (1-3 days);

    b. Any and all students who are eligible for special needs education and who have received a long-term suspension (4-10 days);

    c. Any and all students who are eligible for special needs education and who have received an extended suspension (11-44 days);

    d. Any and all students who are eligible for special needs education and who have received an expulsion (45 plus days); and

    e. Any and all students currently placed in alternative schools who were referred for special education and found eligible for special education and related services at the alternative school.

(ECF No. 26-2 at 1.)

On September 2, 2020, PGCPS issued a written response to DRM's request. Although PGCPS consented to, and did, provide the number of students subject to short- and long-term suspensions, extended suspensions, and expulsions during the relevant period, PGCPS otherwise refused to provide DRM the information it requested. The letter states in pertinent part:

> At the outset, Maryland does not recognize a cause of action for educational negligence. See *John A. v. Bd. of Educ.,* 400 Md. 363 (2007). Further, there is no allegation raised in your letter that there has been any reported act or omission consistent with the . . . definitions of either abuse or neglect [set forth in PAIMI, 42 U.S.C.S. §§ 10802(1) and (5)]. You state that alleged disproportionate exclusionary discipline rises to the level of negligence; however, this is inconsistent with the definitions of either abuse or neglect set forth in PAIMI, which both state that an act or omission has caused or placed an individual with a disability at risk of injury or death.
>
>         \*        \*        \*
>
> Your allegations seem more appropriately addressed pursuant to the dispute resolution processes set forth in IDEA [Individuals with

>Disabilities Education Act]. The IDEA has established a comprehensive dispute resolution process for disputes involving allegations of the failure to provide a FAPE [free appropriate public education]. It is inappropriate to attempt to obtain student record data under the PAIMI for allegations clearly related to the provision of special education and related services. Accordingly, PGCPS may not release the requested information pursuant to the PAIMI.
>
>\* \* \*
>
>If you obtain additional information that supports your contention that DRM, pursuant to its P&A authority[,] has probable cause for abuse and neglect so that DRM may obtain the requested information, please feel free to provide it and PGCPS will further review your request.

(ECF No. 33-5.)

By letter dated October 26, 2020, DRM advised PGCPS:

>**Initially, we would like to note that we are no longer requesting at this time, the contact information for the parents or guardians of those students in category (a) above** – any and all students who are eligible for special education and who have received a short-term suspension (1-3 days). Although we are entitled to this information, we have determined that we are withdrawing this request at this time. We are however still requesting contact information for the parents or guardians of students in categories (b) through (e) above.
>
>In response to your denial of DRM's requests, we provide the following:
>
>1. DRM is entitled to the contact information for the requested students' parents or guardians so that DRM, as a [P&A System] may obtain authorization for specific records and information.

(ECF No. 26-4)[3] (emphasis in original). Additionally, DRM provided PGCPS with a Probable Cause Certification executed by DRM Executive Director Robin C. Murphy on October 26, 2020. (ECF No. 26-5; the "PCC.") The PCC details, over 6, single-spaced pages, DRM's basis for its

---

[3] Defendants' motions papers refer the court to exhibits previously provided through their response in opposition to Plaintiff's motion for preliminary injunction at ECF No. 26.

decision to investigate whether certain PGCPS students with disabilities and subject to disciplinary exclusion may be subject to educational neglect as contemplated and defined by the P&A Acts.

On November 16, 2020, December 22, 2020, January 11, 2021, and February 8, 2021, the parties corresponded with one another regarding release of the contact information subject to DRM's requests. (ECF Nos. 26-4, 26-6 – 26-9.) On February 16, 2021, PGCPS made the following offer to DRM:

> . . . PGCPS is prepared to offer the following in the spirit of good faith compromise . . . :
>
> 1. PGCPS will provide DRM with the contact information requested on any identified "other students" to whom DRM is referring as the subject of a report described in paragraphs 1 or 2 of the PCC;
>
> 2. PGCPS will provide DRM with the contact information requested on any identified student to whom DRM is referring as having suffered injury under the P&A statutes as a result of PGCPS's alleged acts or omissions as described in paragraphs 3, 4, 5, of the PCC;
>
> 3. PGCPS will provide DRM with the contact information requested on the students who are the subjects of each of the MSDE cases identified in paragraph 5 of the PCC;
>
> 4. PGCPS will provide DRM with the contact information requested on any identified students to whom DRM is referring as having received complaints from the parents under paragraph 6 and 7 of the PCC; . . .

(ECF No. 26-10 at 3.) DRM declined PGCPS's offer to provide contact information for the students identified in paragraphs one through seven of the PCC because DRM already had it. DRM accepted PGCPS's offer to provide contact information for the seven students identified in paragraph five of the PCC. (ECF No. 26-11.) DRM provided PGCPS an updated PCC dated April 16, 2021. (ECF No. 26-12.) On December 21, 2021, PGCPS produced the information for the

seven students identified in paragraph five of the 2021 PCC. (ECF No. 26-13.) The parties were unable to resolve their dispute pertaining to the balance of the undisclosed contact information.

### III. PROCEDURAL HISTORY

On November 23, 2021, DRM filed its Complaint for Declaratory and Injunctive Relief pursuant to 43 U.S.C. § 1983 and the DD Act (Count I); PAIMI (Count II); and PAIR (Count III). (ECF No. 1.) DRM requests the following relief: (1) a declaration that Defendants violated the DD Act, PAIMI and PAIR by refusing to provide DRM with the names and contact information of the parents/legal guardians of students eligible for special education in the school district who have also received suspension or expulsion of more than three days since January 1, 2019; (2) permanent injunctive relief requiring Defendants to produce the above-described information to DRM; (3) that the court maintain jurisdiction over this action until Defendants comply with the DD Act, PAIMI and PAIR as demanded; (3) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and (4) any other or different relief the court deems equitable and just. *Id.* at 15.[4]

The parties did not engage in discovery before filing the instant cross motions for summary judgment.[5]

### IV. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v.*

---

[4] DRM also requested preliminary injunctive relief, which the court denied following a hearing held February 16, 2022. (ECF No. 29.)

[5] Defendants requested an opportunity to engage in discovery in advance of, and in order to respond to, the pending Rule 56 motions. The court, Judge George Hazel then presiding, considered Defendants' request/s, held a hearing regarding same, and ultimately denied Defendants' requests. (ECF Nos. 40, 46 through 53.) The court's memorandum opinion and order are at ECF Nos. 52 and 53. Nothing contained in the instant motions papers causes the court to reconsider its ruling on this issue.

*Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

Further, in undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). Critically, on a Rule 56 motion, the court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs*, 780 F.3d at 569 (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 660 (2014).

**V.     ANALYSIS**

DRM argues that it is entitled to the requested contact information pursuant to the authority granted to it under the DD Act, PAIMI and PAIR. Defendants counter that they are not required to disclose the requested contact information because DRM has failed to demonstrate probable

9

cause and "educational neglect" does not fall within the definitions of abuse or neglect under the P&A Acts. (ECF No. 56 at 16, 18.) The precise issue before the court is whether, as a matter of law, DRM is entitled under the P&A Acts to the "contact information of the parents [and/or] legal guardians of students eligible for special education in the School District who have also received a suspension or expulsion of more than three days since January 1, 2019." (ECF No. 1 at 15.)

### A. Access to Records

As discussed in Section I(A), *supra*, under the P&A Acts, each P&A System is authorized to "have access to all records" of individuals with disabilities and/or mental illness in certain circumstances. The pertinent statutory and regulatory provisions with respect to DRM's access to records is set forth below.

### 1. Statutory Authority

Under the DD Act, PAIR[6] and PAIMI, each P&A System is entitled to access all records of:

1. "any individual . . . who is a client of the system if such individual or the legal guardian . . . has authorized the system to have such access . . . ."

2. "any individual . . . in a situation in which . . . by way of reason of such individual's mental or physical condition, is unable to authorize the [P&A System] to have such access; the individual does not have a legal guardian, conservator, or other legal representative, or the legal guardian of the individual is the State; and a complaint has been received by the [P&A System] about the individual with regard to the status or treatment of the individual

---

[6] PAIR is subject to the same statutory framework with respect to accessing records as set forth in the DD Act. *See* 29 U.S.C. § 794e(f)(2) ("the eligible system will . . . have the same general authorities, including the authority to access records and program income, as are set forth in subtitle C of title I of the [DD Act].")

or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect."

42 U.S.C. § 15043(a)(2)(I)(i)-(ii); 42 U.S.C. § 10805(a)(4)(A)-(B).

Although the P&A Acts are largely similar regarding a P&A System's entitlement to access records, the following differences are worthy of note:

Under the DD Act, each P&A System is authorized to have access to all records of:

> (iii) any individual with a developmental disability, in a situation in which—
>
>> (I) the individual has a legal guardian, conservator, or other legal representative;
>>
>> (II) a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect;
>>
>> (III) such representative has been contacted by such system, upon receipt of the name and address of such representative;
>>
>> (IV) such system has offered assistance to such representative to resolve the situation; and
>>
>> (V) such representative has failed or refused to act on behalf of the individual[.]

42 U.S.C. § 15043(a)(2)(I)(iii)(I)-(V).

Under PAIMI, each P&A System is also authorized to have access to all records of:

> (C) any individual with a mental illness, who has a legal guardian, conservator, or other legal representative, with respect to whom a complaint has been received by the system or with respect to whom there is probable cause to believe the health or safety of the individual is in serious and immediate jeopardy, whenever—
>
>> (i) such representative has been contacted by such system upon receipt of the name and address of such representative;

> (ii) such system has offered assistance to such representative to resolve the situation; and
>
> (iii) such representative has failed or refused to act on behalf of the individual[.]

42 U.S.C. § 10805(a)(4)(C)(i)-(iii).

With respect to "serious and immediate jeopardy," the DD Act provides that P&A Systems shall:

> (ii) have immediate access, not later than 24 hours after the system makes such a request, to the records without consent from another party, in a situation in which services, supports, and other assistance are provided to an individual with a developmental disability—
>
> > (I) if the system determines there is probable cause to believe that the health or safety of the individual is in serious and immediate jeopardy; or
> >
> > (II) in any case of death of an individual with a developmental disability;

42 U.S.C. § 15043(a)(2)(J)(ii).

### B. **Regulatory Guidance**

Regulations promulgated under the P&A Acts provide additional guidance on a P&A System's entitlement to information and records. The DD Act regulations specify when a P&A System is authorized to access records of individuals with developmental disabilities and the time frame within which a P&A System must be given access to same by the party receiving its request (here, PGCPS):

> (1) If the P&A system determines that there is probable cause to believe that the health or safety of the individual with a developmental disability is in serious and immediate jeopardy, or in any case of the death of an individual with a developmental disability, access to the records of the individual with a developmental disability, as described in paragraph (b) of this section shall be provided (including the right to inspect and copy records as specified in paragraph (d) of this section) to the P&A

> system within 24 hours of receipt of the P&A system's written request for the records without the consent of another party.
>
> (2) In all other cases, access to records of individuals with developmental disabilities shall be provided to the P&A system within three business days after the receipt of such a written request from the P&A system.

45 C.F.R. § 1326.25(c)(1)-(2).

The regulation at 45 C.F.R. § 1326.26, titled "Denial or delay of access to records," provides further:

> If a P&A system's access is denied or delayed beyond the deadlines specified in § 1326.25, the P&A system shall be provided, within one business day after the expiration of such deadline, with a written statement of reasons for the denial or delay. In the case of a denial for alleged lack of authorization, the name, address and telephone number of individuals with developmental disabilities and legal guardians, conservators, or other legal representative will be included in the aforementioned response. **All of the above information shall be provided whether or not the P&A has probable cause to suspect abuse or neglect, or has received a complaint**.

45 C.F.R. § 1326.26 (emphasis added).[7]

### C.     Contact Information

Having set out the applicable statutory and regulatory provisions, the court must now assess whether DRM is entitled to the requested contact information. In support of its position that Defendants are required to provide the contact information of the parents/legal guardians of

---

[7] The corresponding PAIMI regulation provides:

> If a P&A system's access to facilities, programs, residents or records covered by the Act or this part is delayed or denied, the P&A system shall be provided promptly with a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name, address and telephone number of the legal guardian, conservator, or other legal representative of an individual with mental illness. Access to facilities, records or residents shall not be delayed or denied without the prompt provision of written statements of the reasons for the denial.

42 C.F.R. § 51.43.

students receiving special education, DRM relies on 45 C.F.R. § 1326.26, *supra,* and *Disability Rights Pennsylvania v. School District of Philadelphia,* 377 F. Supp. 3d 482 (E.D. Pa. 2019). Defendants counter that their denial of DRM's request was not based on DRM's lack of authorization, but rather on DRM's failure to demonstrate probable cause. Specifically, Defendants assert that DRM is required, and failed, to demonstrate probable cause in order to access the contact information pursuant to 45 C.F.R. § 1326.25(f). (ECF No. 56 at 21, 23.)

Defendants' understanding of, and reliance upon, 45 C.F.R. § 1326.25(f) is misplaced.

45 C.F.R. § 1326.25(f) provides:

> (f) Educational agencies, including public, private, and charter schools, as well as, public and private residential and non-residential schools, must provide a P&A with the name of and contact information for the parent or guardian of a student for whom the P&A has probable cause to obtain records under the DD Act.

Stated differently, if a P&A System has the probable cause as required by the DD Act at 42 U.S.C. § 15043(a)(2)(I),[8] then – pursuant to the DD Act regulation at 45 C.F.R. § 1326.25(f) – the educational agency is mandated to provide the P&A System access to the student records (by operation of 42 U.S.C. § 15043(a)(2)(I)(ii)-(iii)) *and* the name and contact information of the students' parent(s)/legal guardian(s) by operation of 45 C.F.R. § 1326.25(f). Section 1326.25(f) does not, and cannot be read to, require a P&A System to have (or demonstrate)[9] probable cause to receive the contact information in the first instance; instead, once the P&A System has probable cause to access student records (per 42 U.S.C. § 15043(a)(2)(I)(ii)-(iii)), the education agency is

---

[8] Probable cause is defined as "a reasonable ground for belief that an individual with developmental disability(ies) has been, or may be, subject to abuse or neglect, or that the health or safety of the individual is in serious and immediate jeopardy." 45 C.F.R. § 1326.19.
[9] As discussed below, the court rejects the notion that the P&A System must demonstrate its statutory probable cause to the satisfaction of an education agency. *See* p. 18 n.12, *infra*.

required *also* to provide the name(s) and contact information of the students' parent(s)/legal guardian(s).

The court finds *Disability Rights Pa. v. School Dist. of Phila.,* 377 F. Supp. 3d 482 (E.D. Pa. 2019), persuasive. In that case, the plaintiff, a non-profit corporation designated to serve as a P&A System, alleged that it received complaints that students with disabilities were on a waitlist for special education programming and, therefore, not receiving FAPE.[10] The plaintiff P&A System requested the contact information of these students from the school system, which refused and failed to provide it on grounds that failure to provide FAPE does not rise to the level of abuse or neglect under the P&A Acts, which, in turn, according to the school system, meant the plaintiff P&A System failed to establish "probable cause to suspect abuse or neglect" such that the school system would be required to turn over the requested contact information. 377 F. Supp. 3d at 485-86.

The plaintiff P&A System moved for summary judgment on its complaint for declaratory and injunctive relief (like DRM here), arguing that it was entitled to the requested contact information as a matter of law. *Id.* at 483. The court agreed, and found that the regulation at 45 C.F.R. § 1326.26 "anticipated cases such as this one, where a P&A system seeks authorization to access records but cannot obtain authorization without the legal guardians' contact information." *Disability Rights Pa. v. School Dist. of Phila.*, 377 F. Supp. 3d 482, 486 (E.D. Pa. 2019). In requiring the defendants to provide the plaintiff with the contact information, the court explained:

> Plaintiff was unable to obtain authorization to access student records without first contacting parents and legal guardians and, therefore, requested the contact information from Defendants. . . . Defendants' inaction has effectively denied Plaintiff the opportunity to obtain authorization to access the records. In such a case, 45 C.F.R. § 1326.26 requires that the entity denying access provide the contact

---

[10] As mentioned earlier, FAPE means free appropriate public education, guaranteed by the Individuals with Education Improvement Act, 20 U.S.C. §§ 1400, *et seq.*

> information for the legal representatives of the individuals whose records the P&A seeks. Defendant has offered no legal basis to support its refusal to comply with the regulation.

*Id.*[11] In addition to its construction of the regulatory language, the *Disability Rights Pennsylvania* court found support for its ruling in *Pennsylvania Protection & Advocacy, Inc. v. Royer-Greaves School for Blind*. No. 98-3995, 1999 U.S. Dist. LEXIS 4609 (E.D. Pa. May 24, 1999).

In *Royer-Graves*, the plaintiff P&A System sued the defendant school for denying the P&A System access to the school and students residing therein, and for denying the plaintiff student records and/or name and contact information for the students' legal guardians. The plaintiff P&A moved for summary judgment, arguing that the defendant's refusal to provide contact information of each resident of the facility was a violation of the DD Act. 1999 U.S. Dist. LEXIS 4609, at *8. The defendant argued that the plaintiff was "not entitled to a list of guardians because []P&A never established a right to review the records of all [of the school's] students." *Id.* at *22. The *Royer-Greaves* court disagreed: "The plain language of the regulation has been satisfied" because "[t]here is no dispute that one of the reasons given for the refusal to provide plaintiff access to records was a lack of authority." *Id.* at *29.

In analyzing the intent behind the regulation as it pertains to denial of records access, the *Royer-Greaves* court found:

---

[11] Defendants assert that the present case is distinguishable from *Disability Rights Pennsylvania* because (1) "the P&A apparently knew the names of the students for whom it had received complaints;" (2) "the P&A was asking for contact information on what was presumably a relatively small group of students, not approximately 1,000;" and (3) "there was apparently no dispute over whether the school district denied the request for lack of authorization, unlike here when the denial clearly was not for that reason." (ECF No. 56 at 30.)

The *Disability Rights Pennsylvania* court does not indicate, as Defendants suggest, that the plaintiff P&A System knew the names of the students, nor does it indicate that the plaintiff sought contact information for a relatively small group of students. This court agrees, however, that the present case differs from *Disability Rights Pennsylvania* because, here, Defendants refused to fulfill Plaintiff's request on grounds that "educational neglect" does not meet the statutory definitions of abuse and neglect. But the court disagrees that this distinction is material. *See Pennsylvania Protection & Advocacy, Inc. v. Royer-Greaves School for Blind*, No. 98-3995, 1999 U.S. Dist. LEXIS 4609 (E.D. Pa. May 24, 1999).

> The regulation then must be intended to address the situation where a P&A requests to see the records of a resident or residents at a facility, but is unable to provide a sufficient basis of complaints or probable cause to warrant access, and the resident or residents are not clients of the P&A. In such a situation, the P&A would need the permission of the guardian to see the records, but conceivably would not know how to contact the guardian, and the facility can simply deny access by telling the P&A that they are not authorized to view the records. This is the situation presented in the instant case, and the only remedy is to provide the P&A with the names and addresses of the guardians.

1999 U.S. Dist. LEXIS 4609, at *31-32. Although the *Royer-Greaves* court reached its conclusion after finding that the P&A System lacked probable cause, section 1326.26 is applicable whether or not the P&A System has probable cause. *See Disability Rights Pa. v. Sch. Dist. of Phila.*, 377 F. Supp. 3d 482, 487 (E.D. Pa. 2019) (explaining that "the same logic applies [], where no determination is made whether probable cause is present.")

Based on the plain language of 45 C.F.R. § 1326.26, and in light of the guidance provided by *Disability Rights Pa.* and *Royer-Greaves*, DRM is not required to establish probable cause to receive the contact information it requested Defendants provide. The regulation expressly provides that name(s) and contact information should be provided "whether or not the P&A has probable cause to suspect abuse or neglect, or has received a complaint." 45 C.F.R. § 1326.26; *see Disability Rights Pa.*, 377 F. Supp. 3d at 485-86 (declining to address defendants' arguments regarding whether the requests fell within the definition of abuse and/or neglect, or whether plaintiff had probable cause because the plaintiff "sought access only to the contact information"); *see also Disability Rights Wis., Inc. v. State Dep't of Pub. Instruction*, 463 F.3d 719, 728 (7th Cir. 2006) (finding that requiring the P&A System "to obtain authorization before it can learn the names of the children . . . violates both the spirit and the letter of the federal P&A statutes" when

the P&A System had probable cause and "is now attempting to ascertain whether that abuse did in fact occur").

Here, the conditions set forth in 45 C.F.R. § 1326.26 are met regardless of whether DRM had probable cause or received a complaint. First, DRM's access was denied or delayed beyond the three-day deadline specified in section 1326.25. Second, Defendants denied DRM's request for records based on lack of authorization, as one of the reasons Defendants articulated for denying DRM's request was that "PGCPS may not provide student record information without a signed authorization." (ECF No. 33-5.)[12] *See Royer-Graves*, *supra* at *29 (finding the plain language of the regulation is met when "one of the reasons given for the refusal to provide plaintiff access to records was a lack of authority."). Therefore, Defendants were obliged to provide DRM the contact information in their response declining to produce the records. 45 C.F.R. § 1326.26.

Accordingly, pursuant to the P&A Acts, 45 C.F.R. § 1326.26, and 42 C.F.R. § 51.43, Defendants must provide the requested "names and contact information of the parents/legal

---

[12] Defendants' assertion that they did not deny the request for "lack of authorization" but rather because DRM lacked "probable cause" is a distinction without a difference. The instances set forth in the P&A Acts and regulations that require probable cause contemplate the absence of authorization. Therefore, any request for records not made with authorization is based on probable cause. Simply stated, if DRM has authorization, it does not need probable cause to access records, but DRM cannot obtain authorization without the contact information. The regulation clearly contemplates a P&A System having access to contact information to obtain authorization or establish probable cause if needed. Such a task is impossible for DRM to undertake if Defendants do not disclose the contact information, which is why section 1326.26 requires the contact information be provided irrespective of the existence probable cause or a complaint.

Additionally, Defendants' position that they may decline to provide the contact information because they determined that the conditions DRM described did not meet statutory definitions or because DRM did not establish probable cause to their satisfaction is illogical. Defendants' position, if valid, means that PGCPS, as the party responsible for the alleged abuse or neglect, is privileged to decide whether probable cause exists. Such a scenario would produce absurd results – not unlike a suspected criminal empowered to decide whether a police officer has probable cause to arrest. If that were the case, the court wagers there would never be probable cause for an arrest. Similarly, if an alleged proponent of neglect and abuse were empowered to dictate whether probable cause exists to suspect neglect and/or abuse, there would likely never be a finding of probable cause. "It is well-settled that a protection and advocacy system is the 'final arbiter of probable cause for the purpose of triggering its authority to access all records for an individual that may have been subject to abuse or neglect.'" *Disability Rights Ohio v. Buckeye Ranch Inc.,* 375 F. Supp. 3d 873, 883 (S.D. Ohio 2019) (quoting *Arizona Center for Disability Law v. Allen,* 197 F.R.D. 689, 693 (D. Ariz. 2000)).

guardians of students eligible for special education in the School District who have also received a suspension or expulsion of more than three days since January 1, 2019." (ECF No. 1 at 15.)

## VI. CONCLUSION

For the reasons set forth herein, by separate order, Plaintiff's Motion for Summary Judgment (ECF No. 33) will be granted, and Defendants' Motion for Summary Judgment (ECF Nos. 56 and 57) will be denied.

/S/

_____
Judge Julie R. Rubin
United States District Court

March 24, 2023